UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| DEBRA ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:19-CV-267-HAB |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of the Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Debra Adams seeks review of the final decision of the Commissioner of the Social Security Administration (Commissioner) denying her application for Supplemental Security Income (SSI). Plaintiff alleges that she has been disabled since August 21, 2015, due to a variety of physical and mental impairments, including disorders of the lumbar and cervical spine, scoliosis, anxiety, bipolar disorder, depression and polysubstance abuse. Because the evidence does not substantially support the ALJ's decision, the Commissioner's decision will be REVERSED and REMANDED for proceedings consistent with this Opinion and Order.

**A.    Procedural Background**

On August 1, 2014, the Plaintiff protectively filed a Title XVI application for supplemental security income, alleging disability beginning on August 1, 2014. (R. 47.) Her claim was denied initially and upon reconsideration. (*Id*.) On May 29, 2018, the Plaintiff appeared with her attorney and testified at a hearing before an administrative law judge (ALJ). (*Id*.) Thomas A. Grzesik, a vocational expert, also appeared at the hearing. The plaintiff requested, and the ALJ accepted her request, to amend her alleged onset date to August 21, 2015.

On July 30, 2018, the ALJ denied the Plaintiff's application finding she was not disabled. After the Appeals counsel declined to review it, the decision became the Commissioner's final decision for purposes of judicial review.  (R. 1–7.)

## B.  The ALJ's Decision

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for supplemental security income. *See* 42 U.S.C. § 1382c(a)(3)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 1382c(a)(3)(B).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and, if not (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 416.920(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

Here, at step one, the ALJ found that Plaintiff had not been employed after the alleged disability onset date. (R. 49). At step two, the ALJ found that Plaintiff had the severe impairments

of disorders of the lumbar and cervical spine, scoliosis, anxiety, bipolar disorder, depression, and polysubstance abuse. (*Id.*) The ALJ stated that these impairments significantly limit her ability to perform basic work activities. The ALJ found that for other diagnosed impairments, including GERD and colitis, there were no significant objective medical findings to support more than minimal limitations on the Plaintiff's ability to perform work activities. (*Id.*)

At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 50.) The ALJ considered listings 1.04 (disorders of the spine) and 12.04 (depressive, bipolar and related disorders).

Before moving to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(a) except the claimant could lift and carry twenty pounds occasionally and ten pounds frequently. The RFC included numerous postural and environmental limitations and noted the following:

> The claimant can sit for six hours and stand and/or walk for six hours for a total of eight hours in a workday, with normal breaks. The claimant can occasionally climb stairs and ramps, but cannot climb ladders, ropes and scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant must avoid concentrated exposure to extremes in temperature, high humidity and vibration. The claimant is capable of frequent handling and fingering with the bilateral upper extremities. The claimant is able to understand, remember, and carry out instructions to perform simple tasks. The claimaint is limited to routine and repetitive work in which she is performing essentially the same tasks in the same place every day. The claimant cannot perform fast-paced or piece rate work. The claimant is limited to occasional and superficial interaction with coworkers, supervisors and the public.

(R. 52).

Based on the above RFC and his hypothetical questions to the vocational expert, the ALJ found Plaintiff to be capable of making a successful adjustment to other work that exists in

significant numbers in the national economy. Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.

### C. Standard of Review

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus, the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court reviews the entire record; however, it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 608. The court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and his conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir.

2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## DISCUSSION

The Plaintiff argues that the ALJ's physical and mental RFC assessments were not supported by substantial evidence.  Additionally, she argues that the Appeals Council erred in denying her request for review and the ALJ failed to properly evaluate her symptoms. Because an analysis of the first two arguments is determinative of this Court's decision to remand, the Court need not address the remaining two arguments.

### 1.  Physical RFC Assessment

Turning first to the analysis of the ALJ's physical RFC assessment, Plaintiff asserts three errors by the ALJ: (1) the ALJ's limitation to frequent bilateral handling and fingering rather than more severe limitations; (2) the ALJ's reliance on outdated medical opinions; and (3) the ALJ's failure to include limitations relating to her use of a cane.  The Court addresses these assertions of error *ad seriatim.*

The ALJ adopted the opinion of the non-examining state agency reviewing physicians, Drs. Brill and Whitley, regarding the Plaintiff's limitations. Those physicians determined that the plaintiff was limited to work "at the light exertional level with additional postural limitations." (R. 55). The ALJ determined those opinions were consistent with the medical record, specifically

noting that the Plaintiff has complained of back pain and had a cane during the hearing but other portions of the medical record demonstrate that she had the ability to ambulate with a normal gait. (*Id.*; R. 54: "Although the claimant had a cane during the hearing and seemed unsteady, the claimant has demonstrated the ability to walk with a steady gait and station on multiple occasions."). That said, the ALJ indicated that although he agreed with the ultimate determination, he differed with the reviewing physicians' opinions "slightly" and assessed her environmental limitations based on her hearing testimony. (R. 55). Specifically, the ALJ limited the plaintiff to "frequent handling and fingering."

Plaintiff argues that the ALJ failed to build an "accurate and logical bridge" from the evidence to support this restriction as opposed to a more stringent limitation to occasional or less than occasional fingering and handling. (Br. at 5). The ALJ noted that "while the claimant has sometimes had only 4/5 muscle strength, including during her consultative examination, the claimant has also demonstrated 5/5 muscle strength." (R. 54). He cited to instances in the medical evidence where Plaintiff's muscle strength was 5/5 along with specific evidence from her consultative exam. The ALJ noted that the plaintiff has "only 4/5 strength in the upper extremities and was noted to have generalized weakness throughout her body." (R. 54). He went on to note that "[n]evertheless, the claimant had normal coordination and good fine finger manipulative abilities, including the ability to button, zip, and pick up coins. The claimant had the full range of motion in all upper extremities." (*Id.*)

Plaintiff believes that the ALJ had an obligation to go further and explain how that evidence led to his conclusion that she could frequently handle and finger. She points to conflicting evidence in the medical records that reveal that her grip strength was "well below average for a woman [of] her age at the time" (R. 576) as well as her statements that her hands were weak and tingled (R.

869), that she needed help from her neighbor to bring in groceries (R. 151), that she had to use both hands to lift milk out of the fridge (R. 148), and that she had difficulty grooming her hair because her right arm would not lift past a certain degree (R. 353). She contends that based on this evidence, the ALJ should have summoned a medical expert to review the record to determine if the limitation the ALJ chose was grounded in evidence. Finally, she points out that much of the medical evidence cited by the ALJ to support his lesser restrictions involves her records before mental health providers where, arguably, the providers are not examining Plaintiff for such limitations.  Thus, she argues that the Court should remand for a redetermination of this issue.

The Court agrees that the ALJ, while examining some of the medical evidence, failed to adequately discuss his determination as to how that medical evidence yielded the restriction he chose. The ALJ failed altogether to discuss *how* the medical evidence in tandem with the Plaintiff's own statements as to her abilities led him to the restriction he chose. Indeed, the ALJ ignored the non-medical evidence in the record without offering any justification for it. Once he departed from the non-agency physicians' opinion, the ALJ was left with an evidentiary deficit which he was obligated to bridge rather than guess.  He did not do so, and for this reason, remand is appropriate. *Barnes v. Saul*, 2020 WL 1041488 *4 (N.D. Ind. Mar. 3, 2020) (finding remand appropriate where the ALJ, "did not adequately explain how he arrived at his conclusion that Plaintiff was capable of 'frequent' handling and fingering.").

Plaintiff also argues that Dr. Whitley's opinion was unreliable because it was outdated, and he did not have the opportunity to review a 2017 MRI of her lumbar spine, a 2018 MRI of her cervical spine, and various examination findings. She asserts that the ALJ failed to submit any of this new medical evidence for review before making his determination and had he done so, a qualified physician may have determined that Plaintiff was limited to sedentary work rather than

light work. As Plaintiff points out, whether her RFC limits her to light or sedentary work is crucial in this case since "at the sedentary level, [Plaintiff] would have been found disabled as of her application date, at age 50." (Br. at 9, citing 20 C.F.R. Part 404, Subpart P., App. 2 §201.00(g)). !

The record demonstrates that Dr. Whitley's opinion was issued in April 2016 and did not cite medical evidence after 2015. However, a September 2017 MRI of Plaintiff's lumbar spine revealed: mild to moderate disc disease with narrowing of disc spaces and marginal osteophytes; degenerative changes and hypertrophy of facet joints; mild disc disease at L1-2 and L2-3, with mild degenerative changes of facet joints; mild vascular calcification and moderate scoliosis of the lumbar spine. (R. 875). On January 4, 2018, an MRI of her cervical spine revealed: a posterior disc osteophyte complex, facet arthropathy, narrowing of the right lateral recess, and mild right foraminal stenosis at C2-3; a mild posterior disc osteophyte complex, facet arthropathy and moderate to severe left foraminal stenosis at C6-7 (R. 905–06).

In addition to these MRI's, Plaintiff saw Dr. Sheel Patel, M.D., several times in March 2018. He observed Plaintiff in severe pain with range of motion of the cervical spine, and mild to moderate pain with range of motion of the lumbar spine. (R. 894.) Plaintiff ambulated with difficulty and exhibited guarding and antalgic behavior. (R. 902.) She had bilateral positive straight leg tests. (R. 894).

The ALJ's decision ignored most of the above evidence in favor of the state agency physicians' decisions and the medical consultative exam conclusions. The decision mentions the September 2017 and January 2018 MRIs and related findings generally (R. 54) but does not discuss how such findings impacted or failed to impact the opinions of the state agency physicians. The ALJ also relied heavily on the medical consultative examination in November 2015 but upon review of the additional later-acquired medical evidence, that reliance is questionable. Dr. Patel's

observations in March 2018 call into question whether the ALJ should have relied solely on the evidence of the consultative exam and the reviewing physicians.  Indeed, the consultative exam in 2015 found that the plaintiff had retained the full range of motion of her lumbar and cervical spines (R. 54) and had two negative straight leg tests, facts at least called into question by Dr. Patel's 2018 observations.

The Commissioner asserts that because no physician opinion contradicted Dr. Whitley's assessment, it was not error to rely on it. That may ultimately bear out, but Seventh Circuit precedent suggests that an ALJ errs by relying on outdated opinion evidence from state agency consultants despite the presence of significant evidence in the record that was either not available or not yet created at the time the consultant issued an opinion. *See Campbell v. Astrue*, 627 F.3d 299, 309 (7th Cir. 2010) (noting ALJ's error in relying on opinions of state agency psychiatrist and psychologist who did not have access to subsequently created medical records from treating psychiatrist). Here, there is later-acquired medical evidence not submitted to the state consultants for medical scrutiny and the ALJ failed altogether to explain or discuss how the later-acquired medical evidence squared with the findings of the state agency consultants. In this way, the ALJ improperly assumed the role of doctor. *Goins v. Colvin,* 764 F.3d 677, 680 (7th Cir. 2014); *Harlin v.v Astrue*, 424 Fed.Appx. 564, 568 (7th Cir. 2011)("To the extent that the ALJ projected how [the medical expert] would have testified had she seen the additional documents, the ALJ improperly assumed the role of doctor.") On remand, the ALJ must consider the later-acquired medical evidence and determine whether that warrants different or more extensive limitations than those in the agency physicians' opinions. !

Finally, Plaintiff argues that the ALJ failed to include limitations regarding her use of a cane or for a sit/stand option, despite medical evidence suggesting that she had difficulty

ambulating. Neither agency physician opined that Plaintiff required a cane or needed a sit/stand option, but as noted, the later-acquired evidence might have impacted their decision. Additionally, Plaintiff points to her own statements as to the usefulness of a cane and her ability to ambulate. On remand, the ALJ should consider whether the record, as a whole, supports such a limitation.

### 2.   **Mental RFC Assessment**

As for the ALJ's mental RFC assessment, Plaintiff argues that the ALJ's decision should have found different or greater mental functional limitations. The ALJ found that the Plaintiff: could understand, remember, carry out instructions to perform simple tasks; could perform routine and repetitive work in which she is performing essentially the same tasks in the same place every day; could not perform fast-paced or piece rate work, and was limited to end of day goals only; and was limited to occasional and superficial interaction with coworkers, supervisors and the public. (R. 52) To reach these conclusions, the ALJ relied upon the state agency psychologists' opinions.

Dr. Horton reviewed the record evidence including the report of the consultative examining psychologist Dr. Swanson. Dr. Horton opined that Plaintiff had moderate difficulties in concentration, persistence, or pace. (R. 166.) Plaintiff could "understand, remember, and carry-out semi-skilled tasks within physical parameters." (R. 169–170.) Later, state agency psychologist Dr. Shipley reviewed updated record evidence and concluded there was no change in Plaintiff's condition. The ALJ afforded "considerable weight" to these consultants as they were "consistent with the record."

The ALJ also considered the Plaintiff's statements and testimony to conclude that Plaintiff was slightly more limited than the state agency consultants concluded. Specifically, he concluded that additional limitations were warranted due to her self-reports of social isolation and he limited

her to superficial and occasional contact in the workplace. The ALJ noted that Plaintiff reported

"some memory problems" (R. 50), was "reclusive" (R. 51), had difficulty with social interactions

(R. 141: "I couldn't deal with the public anymore [as a waitress]"), and difficulty with

concentration. (R. 51).

Plaintiff asserts that the record supports even greater limitations than those found by the

ALJ.  For instance, she asserts that the evidence supports that she required more extensive social

limitations and that she would struggle to maintain concentration, persistence, and pace throughout

the workday. She looks to statements during her consultative examination that she rarely left home

and rarely socialized. (R. 580: "Sometimes I don't go out at all … I have anxiety to be around

people. I am just kind of [a] recluse."). Similarly, she emphasizes her reports during medical

treatment that she suffered from poor concentration, excessive worry, restlessness, and sleep

problems. (R. 676, 753, 760, 800, 817, 834, 837, 1098, 1116.) She would get "lost and confused"

sometimes (R. 147). She reported that she needed to take breaks during the day due to fatigue and

pain, and would lose attention after 30 to 40 minutes, depending on the subject. (R. 133, 149, 581.)

Lastly, she identifies certain portions of the state agency physicians reports that indicate she was

moderately limited in: maintaining attention and concentration for extended periods; working in

coordination with or in proximity to others without being distracted by them; completing a normal

workday/workweek without interruptions from psychologically based symptoms; and performing

at a consistent pace without an unreasonable number and length of rest periods. (R. 169).

The ALJ was entitled to rely on the state agency psychologists to the extent that their

opinions were supported by substantial evidence. Likewise, he was entitled to assess the Plaintiff's

self-reported limitations and accord them weight if confirmed and supported by the objective and

subjective evidence. That is precisely what the ALJ did here, in part. Where the ALJ erred is that

he did not identify all the limitations set out by the state agency psychologists or supported by the Plaintiff's statements. For this reason, the Court must remand.

Plaintiff also argues that the ALJ was required to explain how he determined that the Plaintiff could work pursuant to the RFC assessment despite her moderate limitations in concentration, persistence, and pace. She states that the ALJ did not explain how she could perform simple, routine, and repetitive tasks if she was moderately limited in her capacity to maintain attention and concentration for extended periods. On this point, the Court agrees. Simply limiting tasks to those that are "simple," "routine," or "repetitive," do not adequately accommodate a claimant's difficulties in maintaining concentration, persistence, and pace. *Yurt v. Colvin,* 758 F.3d 850, 858-59 (7th Cir. 2014). Likewise, merely eliminating "fast paced" requirements does not suffice. *Varga v. Colvin,* 794 F.3d 809, 815 (7th Cir. 2014).

Moreover, the ALJ's failure to incorporate all the plaintiff's limitations supported by the record is especially pertinent when the limitations are presented to the vocational expert. Indeed, the ALJ must explicitly account for all a claimant's limitations in his hypothetical, including limitations in concentration, persistence, or pace, unless the vocational expert has independently reviewed the medical record. *See Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018); *Lanigan v. Berryhill*, 865 F.3d 558, 563, 565 (7th Cir. 2017). Here, had the ALJ included all the claimant's limitations as outlined by the state agency physicians, the vocational expert may have concluded differently as to the available jobs in the national economy the Plaintiff could perform. Because this ultimately could sway the disability conclusion, remand is required.

### 3. Remaining Arguments

Having concluded that remand is appropriate, the Court need not address the remainder of Plaintiff's arguments in support of remand.

## <u>CONCLUSION</u>

For the foregoing reasons, the decision of the Commissioner is REMANDED for further

proceedings consistent with this Opinion and Order. The Clerk is DIRECTED to enter judgment

in favor of Plaintiff and against the Defendant.


SO ORDERED on May 19, 2020.

 s/ Holly A. Brady_____
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT